U.S. BANKRUPTCY COURT
District of South Carolina

Case Number: 05-04184

ADVERSARY PROCEEDING NO: 06-80086

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT

The relief set forth on the following pages, for a total of 13 pages including this page, is hereby ORDERED.

**FILED BY THE COURT**
**11/06/2006**



US Bankruptcy Court Judge
District of South Carolina

Entered: 11/07/2006

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF SOUTH CAROLINA**

| | |
|---|---|
| In re,<br><br>John S. Ducate,<br><br>                             Debtor(s).<br><br>Ryan W. Hovis,<br><br>                            Plaintiff(s),<br><br>v.<br><br>Anne L Ducate,<br><br>                            Defendant(s). | C/A No. 05-04184-DD<br><br>Adv. Pro. No. 06-80086-DD<br><br>Chapter 7<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |

THIS MATTER is before the Court on Anne L. Ducate's ("Defendant") Motion for Summary Judgment ("Motion") pursuant to Fed. R. Bankr. P. 7056. A hearing was held on the Motion October 3, 2006 where both Defendant and Ryan W. Hovis ("Trustee" or "Plaintiff") appeared, by and through counsel, to argue the Motion.

*Factual Background*

John Ducate, Sr. ("Debtor") was a member of numerous corporate entities over the years. Two are most relevant to the present action. Debtor was the president and shareholder of a business known as The Ducate Brothers, later Ducane Company, Ltd, and last known as Ducane Gas Grills, Inc ("DGG")[1] prior to its liquidation under Chapter 7 of the Bankruptcy Code. Debtor was also president and part owner, along with his son, of F&S Realty, LLC ("F&S"). F&S was formed for the purpose of buying real property and building a manufacturing facility, which was to be leased by DGG. In 1999 Ducate, at age 80, sold his interest in DGG for $3.4 million.

---

[1] It is unclear to the Court whether the Ducane Company's name change to DGG occurred prior to or after Debtor sold his interest. Since they are essentially the same entity the Court will use "Ducane Company" and "DGG" interchangeably.

Defendant has been married to Debtor for 27 years. She worked at the Ducane Company for more than 22 years before her retirement from the business in 1995. In February 2000, Debtor gave his wife, Defendant, the family home and the furnishings therein. At the time of the transfer the family home was appraised for property tax purposes at $737,900. The home was subject to a mortgage of $500,000. As of June 1, 2000, Debtor retained cash and stock accounts totaling $1,680,400.60. Debtor also had a contract to receive a salary from Ducane Gas Grills. Under his contract with DGG, Debtor was to receive $800,000 in 2000, $700,000 in 2001, $600,000 in 2002, and $500,000 per year thereafter until he could no longer work for the company.

Carolina First Bank ("CFB") supplied financing to F&S for the building of the DGG facility, and as part of the transaction Debtor signed a personal guaranty for $500,000 on March 29, 2000. At the time Debtor signed the $500,000 guaranty with CFB he had $1.68 million in the bank, and was a party to the contract entitling him to $2.1 million over the next three years. Over the next few years Debtor lost the majority of his assets in a series of business and stock investments, and was unable to collect the salary due under his contract because DGG became insolvent and was not able to honor its employment agreement.

When it appeared to Debtor that DGG was close to failure he invested $500,000 in DGG through the purchase of preferred stock. F&S was in default on its obligation to CFB by December 31, 2001. In a further attempt to save DGG, the company arranged for a $1 million loan from the Barnwell County Economic Development Corporation ("BCED") in January 2003. Debtor was one of the guarantors for this loan. None of these attempts saved the business and DGG filed a chapter 7 bankruptcy petition December 5, 2003.

2

By 2005, all of Debtor's major investments had failed. F&S, DGG, and Ducane Fine Cabinetry were either in bankruptcy or insolvent. On April 11, 2005, Debtor filed for bankruptcy under Chapter 7 of the Bankruptcy Code, and Plaintiff was appointed trustee

### *Summary Judgment Standard*

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Fed. R. Civ. P.* 56(c) (*Applicable pursuant to Fed. R. Bankr. P.* 7056).

In determining whether to grant a motion for Summary Judgment, the Court does not weigh the evidence; instead, it determines if there is a genuine issue of material fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. The Court must view the facts and draw reasonable inferences in a light most favorable to the non-moving party. *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994). Initially, the party requesting summary judgment must demonstrate the absence of any genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Upon a demonstration that there is no dispute as to genuine issues of material fact, the burden shifts to the non-moving party to set forth specific facts that demonstrate a genuine issue of material fact for trial. Id.

### *Discussion*

Plaintiff bases his causes of actions on 11 U.S.C. § 548[2] and SC Code Ann §27-23-10 ("Statute of Elizabeth") made applicable by § 544. Section 548 affords the Trustee the power to avoid fraudulent transfers that have occurred within one (1) year of the bankruptcy filing.

---

[2] Further reference to the Bankruptcy Code, 11 U.S.C. § 101 *et seq.*, will by section number only.

3

Trustee's second avoidance action is based on SC Code Ann §27-23-10(A) ("Statute of Elizabeth"), which has a three-year statute of limitations pursuant to SC Code Ann. § 15-3-530(7).  The Trustee enjoys a one (1) year window to bring these actions.  *See* §546(a)(1)(B). The underlying statute of limitation does not expire except as provided by § 108(a).

### *I. § 548 Claim*

Defendant seeks summary judgment on the Trustee's § 548 claim arguing that the Trustee has not identified any specific transfers within the year period preceding the filing of the bankruptcy case.  The Plaintiff seeks to avoid the transfer of the Debtor's residence and the personal property that took place in the year 2000.  To the extent the Trustee attempts to avoid these specific transfers under § 548, the Court finds that the Statute of Limitations has run for these transfers.  This precludes avoidance of the transfer regarding the home and furnishings under § 548.

It appears from the pleadings and arguments of record that Plaintiff seeks avoidance under § 548 of multiple transfers totaling $324,166.09, which occurred within the one (1) year preceding the bankruptcy filing.  This claim stems from the deposits into and withdrawals and/or payments out of two (2) bank accounts that the Defendant has termed the "household account."  The accounts in question were each held by separate financial institutions.  The purpose of these accounts, according to the Defendant, was to pay the ordinary household expenses of herself and her Debtor spouse.  The first appears to be a joint account held with CFB, which is in fact is entitled "household account."  The second is an account held with Bank of America and is in Anne Ducate's name alone.  Debtor filed the relevant bankruptcy case on April 11, 2005.

4

*A. Carolina First Account*

In Anne Ducate's affidavit she states that "in or about January 2004" the CFB Household Account was closed and she moved the funds to a new account at Bank of America. It appears from the exhibits submitted to the Court that the account was actually closed on or about May 6, 2004. According to the last CFB account statement of which the Court is aware by submission of exhibits, covering the dates April 6, 2004 through May 6, 2004, there were no deposits made to this account. It follows that because the bankruptcy case was filed April 11, 2005 that the recovery of any transfer before April 11, 2004 would be barred by the one (1) year look back period of 11 U.S.C. § 548. Furthermore, because no deposits were made on this last statement, the Court need not consider any transfers concerning the Carolina First household account, as there were no transfers during the applicable period.

*B. Bank of America Account*

The Defendant argued at the hearing on the Motion that no transfer(s) could have taken place between the Defendant and the Debtor because the Bank of America account was a joint account. The Defendant, in her pleadings and testimony, refers to the Bank of America account as the "household account." If this account was a joint account or household account during the relevant time period, the evidence fails to indicate this fact. The exhibits show that the Bank of America account, during the year preceding the bankruptcy, was solely in Anne Ducate's name and was not identified as a household account.

The Plaintiff identifies no specific deposits or payments made by the Debtor into the account in regards to the § 548 claim, rather, the Plaintiff asserts that *all* the funds deposited into the account over the one-year period, with the exception of income realized by

5

Defendant through social security, were made by the Debtor and are avoidable transfers. Plaintiff basis this assertion on (1) a statement by Defendant that she had no other source of income over that period other than social security benefits totaling $14,124.00 and (2) Defendant's statements admitting that she received a "household allowance" from Debtor, from which she paid household expenses for both herself and Debtor.

Plaintiff claims this circumstantial evidence is adequate proof that Debtor made the transfers to Defendant. This evidence is sufficient to shift the burden of proving the source of the funds to the Defendant. The Defendant submitted an affidavit as evidence of the origin of the deposits, stating,

> I have reviewed the household account[3] records to determine how much I transferred into the household account during the one year period immediately prior to my husband's bankruptcy – that is from April 21, 2004 to April 20, 2005. During that period, I deposited at least $233,172.76 into the account from my personal funds. These deposits included all my social security income, money from my personal savings, money I received as beneficiary of a life insurance policy, and money I borrowed.

*Affidavit of Anne L. Ducate* P. 2 ¶ 4.

Subtracting the social security benefits received by Defendant, which has already been accounted for in the Trustee's figure, leaves $105,117.33[4] unaccounted for by the Defendant. This shifts the burden back to the Plaintiff to prove that the funds did not originate from the sources the Defendant asserts. The Plaintiff has submitted nothing to contradict the Defendant's sworn statements. There is no material dispute that $219,048.76 was deposited by the Defendant from her own funds. The Court grants summary judgment in favor of Defendant on the Plaintiff's § 548 claim in the amount of $219,048.76.

---

[3] The Defendant is referring to the Bank of America account.
[4] $324,166.09 – ($233,172.76 – $14,124.00) = $105,117.33

Of the $105,177.33 that is unaccounted for, Defendant's affidavit further breaks down the expenses as follows:

> From this account, I paid credit cards which were primarily used by John Ducate. In the year prior to bankruptcy I used funds from the household account to pay $45,441.58 on a Carolina First credit card which was used primarily by John Ducate and for which John was personally liable. I also used household funds to pay $8,104.08 on two Capital One accounts on which, to the best of my knowledge, John Ducate was personally liable.
>
> Also from this account in the year prior to bankruptcy, I paid (1) $13,902.98 for groceries for John and I, (2) $2,641.16 for health insurance premiums for John, (3) $8,847.50 in life insurance premiums owed by John, (4) $2,740 in donations to the Living Springs Lutheran Church, which we both attend, (5) $6,948.02 in utilities (gas, electric, sewer, phone, fax, and water) for our family home (6) $1,709.55 for cable internet and television, (7) $1,620 for our medical expenses, (8) 911.58 our membership dues at Spring Valley Country Club, and (9) approximately $4,000 in our clothing expenses.

*Affidavit of Anne L. Ducate* P. 2 ¶ 5-6.

The Plaintiff again fails to offer any evidence to refute these sworn statements. However, due to the qualified language[5] of these statements the Court finds that there is a genuine issue of material fact concerning the origin of $105,177.33 deposited into the account. Furthermore, there is an issue of the utilization of the funds.

## *II. § 544 – Statute of Elizabeth Claim*

To prove a transfer in violation of the Statute of Elizabeth, the Trustee stands in the stead of a creditor. Defendant seeks summary judgment on the Plaintiff's Statute of Elizabeth cause of action as it relates to CFB as that creditor based on statute of limitations arguments,[6] and seeks summary judgment in regards to BCED as that creditor on the basis

---

[5] The Court is referring to "used primarily by," "to the best of my knowledge," and any of the Defendant's statements indicating that the expenses were for both her and the Debtor.

[6] At the hearing Plaintiff briefly mentioned § 546, which applies a statute of limitations on the Trustee in regards to § 544 actions. The Court notes this only to alleviate any confusion. The Court does not interpret Defendant's statute of limitations argument as one under § 546, but rather, an argument under the SC Code annotated § 15-3-530(7) only. To the extend, if any, Defendant argues that the trustee is barred under § 546 the Court finds that the Trustee has met the requirements and is not barred under § 546.

that Plaintiff has failed to establish elements of the cause of action. Section 544 states in relevant part,

> Except as provided in paragraph (2), the trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title or that is not allowable only under section 502(e) of this title.

§ 544(b)(1).

South Carolina's Statute of Elizabeth states in relevant part,

> Every gift, grant, alienation, bargain, transfer, and conveyance of lands, tenements, or hereditaments, goods and chattels or any of them… which may be had or made to or for any intent or purpose to delay, hinder, or defraud creditors and others of their just and lawful actions, suits, debts, accounts, damages, penalties, and forfeitures must be deemed and taken… to be clearly and utterly void, frustrate and of no effect, any pretense, color, feigned consideration, expressing of use, or any other matter or thing to the contrary notwithstanding.

SC Code Ann §27-23-10(A).[7]

The Statue of Elizabeth allows a creditor to void a fraudulent transfer of property by a debtor. Section 544 allows the Trustee to "step into the shoes" of those creditors. *See Campbell v. Deans (In re J.R. Deans Co.)*, 249 B.R. 121 (Bankr. D.S.C. 2000). Therefore, in order for the trustee to maintain a Statute of Elizabeth action there must be at least one creditor with a valid unsecured claim in the bankruptcy case. Defendant argues that the Plaintiff's pleadings need to be specific and identify with particularity, the creditor(s) on which the Trustee relies. The Court does not read § 544 so narrowly. The Court understands § 544 to stand for the proposition that the Trustee has a cause of action as long as there is *a* creditor with a valid unsecured claim. *See In re Image Worldwide, Ltd.*, 139 F.3d 574 (7th Cir. 1998). The Court finds that there are two creditors with allowed

---

[7] It is uncontested by the parties that the Statute of Elizabeth has a three (3) year statute of limitations pursuant to SC Code Ann. § 15-3-530(7).

unsecured claims in this case upon which the Trustee may bring this action pursuant to the Statute of Elizabeth and § 544: (1) CFB and (2) BCED.

*A. Carolina First Bank*

Under South Carolina law the applicable statute of limitations begins to run after two events occur. First, a cause or right of action to institute and maintain a lawsuit must have accrued. *Campbell v. Deans (In re J.R. Deans Co.)*, 249 B.R. 121 (Bankr. D.S.C. 2000). Second, the aggrieved party must have discovered or be charged with knowledge, after the exercise of due diligence, sufficient to put the creditor on notice of the fraud. *See Commercial Credit Loans, Inc. v. Riddle*, 334 S.C. 176, 184 (S.C. Ct. App. 1999) (*citing Walter J. Klein Co. v. Kneece*, 239 S.C. 478 (S.C. 1962)).

The evidence shows and the Court finds that CFB had a right to institute an action against F&S and Debtor as personal guarantor no later than December 2001. CFB's bank officer, David Francis, testified that F&S was in default in December 2000. *Dep. of D. Francis*, pg. 6, ln. 3- 12. Furthermore, the Trustee stated in Answer to the Defendant's Interrogatory Number 7, "Ducane Gas Grills and F&S Realty, LLC, were in default on the Carolina First Bank obligation no later than December 31, 2001."

The Court further finds that CFB possessed facts sufficient to put it on notice of the transfer no later than November 2001. In answer to The Defendant's Interrogatory Number 10, the Plaintiff states, "based on documents produced by Carolina First Bank ... the Bank would have become aware that Ducate transferred his interest in the family home to his wife in November 2001 when the Ducates applied to refinance the note on their residence." The Plaintiff argued at the hearing that representations made to CFB by the Ducates that the Defendant would re-convey to the Debtor a half interest in the family home property in January 2002 caused the bank to be unaware of the transfer until November 2002, when the

9

bank was provided a financing statement showing Debtor owned no real property. These alleged representations are irrelevant to the present inquiry. By Plaintiffs own admissions CFB knew of the transfer in November 2001. If CFB wished to protect itself it could have required the Ducates to submit a deed showing the re-conveyance of the property before it lent the funds. Regardless, the facts show that CFB was aware that Debtor transferred the property in November 2001.

The statute of limitations began to run no later than December 31, 2001. Therefore, CFB's claims are barred by the statute of limitations after December 31, 2004, approximately four (4) months before the Debtor filed for bankruptcy on April 11, 2005. Because CFB had no cause of action on the date the bankruptcy petition was filed, the Trustee has no Statute of Elizabeth remedy based on the claim of CFB. Defendant's motion for summary judgment is GRANTED as to Trustee's § 544 claim insomuch as it relies on the claim of creditor CFB.

*B. Barnwell County Economic Development Corporation*

It is undisputed that BCED is a subsequent creditor and the statute of limitations has not run on this creditor. Defendant asserts summary judgment is appropriate as to the Trustee's Statute of Elizabeth action relying on the Creditor BCED because fraud cannot be shown as a matter of law. "[S]ubsequent creditors may have conveyances set aside when (1) the conveyance was 'voluntary,' that is, without consideration, and (2) it was made with a view to future indebtedness or with an actual fraudulent intent on the part of the grantor to defraud creditors." *In re: J. R. Deans*, 249 B.R. 121, 130-31 (D.S.C. 2000); *Mathis v. Burton*, 460 S.E.2d 406, 408 (S.C. Ct. App. 1995; *Durham v. Blackard* 438 S.E.2d 259, 262 (S.C. Ct. App. 1993). "The analysis for a subsequent creditor to avoid a fraudulent conveyance is slightly different [from that of existing creditors]. *Deans*, 249 B.R. at 130….The two prongs of the subsequent creditor standard are conjunctive; the Trustee must establish both to

prevail." *Campbell v. Collins (In re Collins)*, C/A No. 03-04179-JW, Adv. Pro. No. 04-80284, 2005 Bankr. LEXIS 2924, 16-17(Bankr. D.S.C. April 26, 2005). Based on the undisputed facts the Court finds that the transfer of the home and furnishings were voluntary. The final issue is whether the transfers were made (i) with an actual fraudulent intent on the part of the grantor to defraud creditors or (ii) with a view to future indebtedness.

*(i) Actual Fraud*

The Defendant asserts that she is entitled to summary judgment because the "Trustee cannot prove fraud as to the BCED debt." The test, however, does not require fraud as to a specific creditor, only that the transfer was made with an intent to "defraud creditors" in general. Thus, if Debtor transferred the property with the intention of defrauding any creditor, the second prong would be satisfied. Normally, the burden of proving fraud is on the plaintiff. However, because the transfer was between spouses the burden shifts to the Defendant. "Where transfers to members of the family are attacked either upon the ground of actual fraud or on account of their voluntary character, the law imposes the burden on the transferee to establish both a valuable consideration and the bona fides of the transaction by clear and convincing testimony." *In re J.R. Deans Co., Inc.*, 249 B.R. 121, 134 (Bkrtcy. D.S.C. 2000).

The Trustee relies on the "badges of fraud" from *Coleman v. Daniel*, 199 S.E.2d 74, 79 (S.C. 1973) to prove actual fraud. However, given the shifting of the burden the Trustee is not required to prove the actual fraud, rather, the Defendant must rebut by clear and convincing evidence the "presumption of fraud" that results due to the relationship between the transferee and Debtor. The record does not contain evidence to rebut this presumption. Therefore, an issue of material fact exists as to whether the Debtor committed "actual fraud."

11

*(ii) Future Indebtedness*

The facts considered in the actual fraud discussion above are relevant to the determination on the question of transfers with a view to future indebtedness. Issues of material fact exist as to whether Debtor transferred the property "in view of future indebtedness." It is therefore,

ORDERED that summary judgment is GRANTED in favor of the Defendant on the § 548 count as to the transfers in the amount of $219,048.76, and that consideration of the other transfers remains for trial; and it is further

ORDERED that Defendant's motion for summary judgment on Trustee's Statute of Elizabeth cause of action as to the CFB claim is GRANTED; and it is further

ORDERED that Defendant's motion for summary judgment on Trustee's Statute of Elizabeth cause of action as to the BCED claim is DENIED.

**AND IT IS SO ORDERED.**

Columbia, South Carolina
November 6, 2006